## Commonwealth of Pennsylvania *v.* Robert W. Brown, Appellant.

*Criminal law—Murder—Evidence—Threats.*

On the trial of an indictment against a husband for the murder of his wife, where it appears that shortly before the murder the prisoner had been arrested at the instance of his wife, and at the hearing before a magistrate he had threatened that he " would get even with her as soon as he got out," the magistrate's docket is admissible in evidence to show the date and nature of the proceedings, although it contains no record of the threats made by the prisoner.

*Criminal law—Insanity—Partial insanity—Husband and wife.*

On the trial of an indictment for wife murder, where the prisoner sets up the defense of partial insanity, limited to his marital troubles, a police officer who had no personal acquaintance with the prisoner, but on several occasions had seen his actions towards his wife, is competent to testify that he had noticed no indication of insanity, but from what he had seen believed the prisoner was sane.

Argued Oct. 16, 1899. Appeal, No. 303, Jan. T., 1899, by defendant, from judgment of O. & T. Phila. Co., April T., 1899, No. 218, on verdict of guilty of murder of the first degree. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Indictment for murder.

At the trial, Thomas W. Cunningham was examined as follows:

Mr. Finletter, of counsel for plaintiff: "Q. You're a magistrate of the city of Philadelphia? A. Yes, sir. Q. Did you hold that office on October 12, 1898? A. Yes, sir. Q. Do you see the prisoner sitting in the dock? A. Yes, sir. Q. Do you recognize him? A. Yes, sir. Q. Under what circumstances did you see him on that day? A. On October 12, 1898, Officer Sheldon arrested Robert W. Brown for annoying his wife at 122 North 16th street. Q. Brown was brought before you as a magistrate? A. Yes, sir. Q. Who appeared against him?"

Objected to. Objection overruled. Exception by defendant.

"Q. State whether this woman appeared or not. A. She did. Q. Who do you mean by saying that she appeared? A. Lucinda Brown. Q. Do you recollect what she said? A. Yes, sir. Q. Please repeat her language."

Objected to. Objection overruled. Exception by defendant.

"A. That her husband, Robert W. Brown, was continually around this house, 122 North 16th street, and annoyed her by asking for money, for something to eat, and for lodgings. Q. What else did she say? A. She said she would like to have some protection—that she was afraid he might do her bodily harm. Q. Was the prisoner, Robert W. Brown, present at that time? A. Yes, sir. Q. How close was he standing to her? A. Right alongside of her. Q. Did he have anything to say about the matter? A. Well, the man apparently loved the woman, and wanted to see her, I suppose. He kept there after her. Q. What did he say about her? A. He didn't seem to say anything. Q. Have you your docket here? A. No, sir. Q. Did you hear him say anything to her after your decision was announced? A. After he left the bar of the court he said that he would get even with her after he got out. Q. That was after you had rendered your decision, and he had left the bar of the court? A. Yes, sir. He said it in open court—that he would get even with her after he got out. Q. When was it that that took place? A. October 12, 1898."

### CROSS-EXAMINATION.

Mr. Nicholas, of counsel for defendant: "Q. (Paper shown witness.) Is that a true copy of your docket? A. Yes, sir."

Mr. Nicholas and Mr. Finletter, representing the defendant and the commonwealth, agree that the prisoner Brown entered the house of correction on October 12, 1898, in pursuance of a commitment by Magistrate Cunningham, and that the defendant, Robert W. Brown, was discharged from the house of correction on December 30, 1898, he remaining during the intervening time in the house of correction. Also that the paper marked "Criminal Transcript" is a true transcript from the docket of the magistrate Cunningham, as follows:

"Return of proceedings before Magistrate's Court, No. 13, of the city of Philadelphia.

"COMMONWEALTH OF PENNSYLVANIA

vs.

ROBERT W. BROWN.

No Home.

"Arrested on the 12th day of October, 1898, on oath of Officer Sheldon subscribed to by said affiant. Defendant charged with vagrancy. After hearing the defendant given six months in the House of Correction.

"Defendant,
"Witness:                  ROBERT W. BROWN.   No home.
  "Officer SHELDON,
      "20th District."   [1]

Officer Sheldon recalled and examined by commonwealth as follows:

"Q. You have said that you have seen Brown around 16th and Arch quite frequently and at other places? A. Yes, sir. Q. What have you seen him doing? A. No more than hanging around. Q. Did you ever see him talking with his wife? A. Yes, sir. Q. And also standing at the corner? A. No, sir; I couldn't say at the corner. I saw him walking up and down from Appletree street to Cherry, and twice up an alley I seen them together. Q. In your judgment was he sane or insane?"

Objected to. Objection overruled. Exception by defendant.
"A. No, sir; I don't think so. In fact I know that he

wasn't unless I am insane.   Q. That is, you think he was sane?
A. He was not insane.   Q. Do you mean to say that he was
sane?   A. He was not insane.   Q. Do you mean to say that
he was sane and in the possession of his faculties?   A. He
knew what he was doing, yes."

CROSS-EXAMINATION.

" Q. How long had you noticed him hanging around there
talking to his wife?   A. I have known him over a year.   Q. Then
you have noticed him hanging around talking to his wife for
over a year?   A. Off and on, yes, sir; I don't know the dates.
Q. To what extent have you conversed with him yourself?
A. Very little, any more than to speak to him.   Q. How often
have you conversed with him yourself?   A. That I couldn't
say.   Q. State about how often.   A. Very little.   If I would
meet him on the street I would speak to him.   Q. And on that
very little conversation, seeing him pass up and down the street,
you base your conclusion that he is a sane man?   A. From
what he spoke to me, yes, sir." [2]

Verdict of guilty of murder of the first degree.   The pris-
oner appealed.

*Errors assigned* among others were (1, 2) rulings on evidence,
quoting the bill of exceptions.

*M. Luther Nicholas*, for appellant.—The magistrate's record
was inadmissible: Coffman v. Hampton, 2 W. & S. 377 ; Welsh
v. Crawford, 14 S. & R. 440 ; Clark v. McComman, 7 W. &
S. 469; Seibert v. Kline, 1 Pa. 38 ; Driesbach v. Morris, 94 Pa.
23 ; Buckmyer v. Dubs, 5 Binney, 29 ; Hazelett v. Ford, 10
Watts, 101 ; Cumberland County v. Boyd, 113 Pa. 52.

Sheldon was incompetent: Boardman v. Woodman, 47 N.
H. 120 ; Com. v. Taylor, 109 Pa. 262; Com. v. Buccieri, 153
Pa. 535.

*P. F. Rothermel*, district attorney, *S. A. Boyle* and *T. D.
Finletter*, assistant district attorneys, for appellee, were not
heard.

OPINION BY MR. JUSTICE DEAN, November 6, 1899 :

The defendant was convicted of murder of the first degree on June 20, 1899, and sentenced to death. The evidence showed that, on December 31, 1898, he had stabbed to death his wife, Lucinda Brown. Because of domestic trouble they had been separated for about three years. From the evidence, the jury found all the elements of murder of the first degree. They could not have found otherwise. We now have this appeal with six assignments of error. The first alleges error in the admission of the testimony of Magistrate Cunningham. On October 12, 1898, the prisoner had been arrested on a charge of breach of the peace, on information made by his wife. At the hearing he was committed; on leaving the magistrate's office, he announced publicly he " would get even with her as soon as he got out." Very soon after he was released from prison he committed the murder. It is objected that no note of what was said by the prisoner appears on the magistrate's docket, which was offered in evidence, solely for the purpose of showing the date and nature of the proceedings; therefore, it is argued, the testimony contradicted the record and was inadmissible.

It was wholly immaterial whether the prisoner testified at the hearing, or, if he did, that the magistrate had made no minute of his testimony. The purpose was to show that the prisoner had threatened his wife and the cause that prompted the threat; the evidence was properly no part of the record, and even if it was and the officer had omitted it, he could still testify from recollection as to what the prisoner said. And the magistrate's docket, although not that of a court of record, was also clearly admissible to show the date and nature of the proceeding, especially when its verity was supported by the testimony of the officer who made the entries. This assignment is overruled.

The second, third, fourth and fifth assignments allege error in admitting the testimony of four witnesses, Sheldon, Hamilton, Fuller and Miller. The prisoner set up the plea of insanity, and to sustain it offered the weakest sort of testimony, such as, that he was continually talking of his marital trouble to those of his friends who would listen to him, and complaining of the obduracy of his wife, who, on account of his ill treatment of her, persisted in living apart from him. In their opinion he was

insane on this subject. It was undoubtedly defendant's right to adduce such testimony although the witnesses were not experts, but only acquaintances. But in answer thereto the commonwealth called the four witnesses mentioned; all but Sheldon were well acquainted with him from one to three years; they testified, after stating their opportunities for observation, that in their opinion he was entirely sane. Sheldon had no personal acquaintance with the prisoner, but he was an officer and patrolled the street where the wife lived; had frequently seen the prisoner lurking in the vicinity apparently seeking an opportunity to meet her; had been present at the hearing at the magistrate's and there witnessed his conduct. It will be noticed that the plea only alleged insanity on the one subject, to wit: his marital troubles; it was on the occasion when seeking his wife and in her presence, that this monomania, if it existed at all, would make itself apparent. Under such circumstances the witness saw him and noticed no indication of insanity, but from what he had seen believed he was sane. This was competent testimony. It is not personal acquaintance alone that is a basis for the opinion of a nonexpert witness, but personal observation, also, under circumstances favorable to correct judgment: Wharton on Criminal Evidence, sec. 417. There is no merit in these assignments and they are overruled.

The sixth assignment is not pressed in the argument, therefore we do not notice it, further than to say it is wholly groundless.

The judgment is affirmed and it is directed that the record be remitted to the court below that it may be carried into execution according to law.